<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-1946

            RHODE ISLAND LABORERS' DISTRICT COUNCIL,
                    LOCAL UNION 808, ET AL.,

                    Plaintiffs, Appellants,

                               v.

                 STATE OF RHODE ISLAND, ET AL.,

                     Defendants, Appellees.

No. 97-1987

                    DAVID E. PERRY, ET AL.,

                    Plaintiffs, Appellants,

                               v.

                 STATE OF RHODE ISLAND, ET AL.,

                     Defendants, Appellees.
                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF RHODE ISLAND

      [Hon. Francis J. Boyle, Senior U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
                Bownes, Senior Circuit Judge,
                                
                  and Boudin, Circuit Judge.
                                

    Richard A. Fairbrothers, Regional Attorney, with
whom Darren F. Corrente, Regional Attorney, was on brief for
appellants Rhode Island Laborers' District Council, Local Union
808, et al.
    Miriam Weizenbaum with whom Amato A. DeLuca and DeLuca &
Weizenbaum, Ltd. were on consolidated brief for appellants David E.
Perry, et al.
    Thomas A. Palombo, Special Assistant Attorney General, State
of Rhode Island, Department of Attorney General, and Harris K.
Weiner, Deputy Executive Counsel to the Governor, on consolidated
brief for appellees State of Rhode Island, Governor Lincoln C.
Almond, General Treasurer Nancy J. Mayer, Attorney General
Jeffrey B. Pine, Director of Administration Robert L. Carl, Jr.,
and Supreme Court Administrator Robert C. Harrall.  

May 27, 1998

                                
                                

 BOUDIN, Circuit Judge.  In 1976, Rhode Island adopted a
statute, entitled Court Clerks' Incentive Pay, providing salary
bonuses for state court clerks who obtained certain degrees.  1976
R.I. Pub.  Laws ch. 205,  1, codified as amended at R.I. Gen. Laws
8-4.1-1 to 8-4.1-5 (1997).  A 10 percent salary increase was
provided for a court clerk who obtained an Associate's Degree in
fields relating to law enforcement or administration of justice; a
Bachelor's Degree in such a field or any field suitable for
admission to an accredited law school was worth a 16 percent
increase.
 After almost 20 years, Rhode Island in 1994 amended the
statute to replace percentage bonuses with flat rate amounts:  
clerks receiving the 10 percent increase would instead receive
$2,000 yearly, and clerks receiving the 16 percent increase would
receive $3,200.  1994 R.I. Pub. Laws, ch. 125,  1, codified atR.I. Gen. Laws  8-4.1-3 (1997).  Clerks hired after July 5, 1994,
received no incentive pay.  Id., codified at R.I. Gen. Laws   8-
4.1-1.  The amendment provided that it would not take effect as to
clerks already receiving incentive pay until the expiry of
collective bargaining agreements then in force.  Id.  2, codified
at R.I. Gen. Laws  8-4.1-7.
 The amendment effectively reduced the salaries of the
clerks, in some cases by over $7,000 per year.  A group of clerks
sued Rhode Island and its officials in the district court, claiming
that the amendment was unconstitutional.  A similar claim was made
by the Rhode Island Laborers' District Council, Local Union 808
("the union") which represented a number but not all of the court
clerks.  The union's complaint also charged that the amendment
abrogated its collective bargaining agreement with Rhode Island.
 The cases were consolidated before the district court,
which heard cross-motions for summary judgment on an agreed
statement of facts.  On July 24, 1997, the district court granted
judgment in favor of the state, rejecting the constitutional
attacks on the amendment.  The district court explicitly declined
to address a claim advanced by the union based on state collective-
bargaining law because it had not been briefed or argued by the
union.
 The clerks and the union now appeal, and we affirm,
primarily on the basis of the district court's decision.  No
detailed discussion of principles is needed because the pertinent
law relating to the Contracts Clause, U.S. Const. art. I,  10, the
main pivot of the appellants' argument in this court, has been set
forth in Parker v. Wakelin, 123 F.3d 1, 9 (1st Cir. 1997), cert.
denied, 66 U.S.L.W. 3717 (U.S. May 5, 1998) (No. 97-1181), and
McGrath v. Rhode Island Retirement Board, 88 F.3d 12 (1st Cir.
1996).  
 As Parker and McGrath explain, the first requisite for a
Contracts Clause argument is showing the existence of a contract
governing the subject in dispute.  Although federal rather than
state standards govern this issue, General Motors Corp v. Romein,
503 U.S. 181, 187 (1992), there is nothing recherch about the
criteria.  They may include not only the words used but also
apparent purpose, context, and any pertinent evidence of actual
intent, including legislative history.  No single form of wording
is essential in order to find a contractual relationship.  Cf.Parker, 123 F.3d at 9.  Further, "a statute is itself treated as a
contract when the language and circumstances evince a legislative
intent to create private rights . . . ."  United States Trust Co.v. New Jersey, 431 U.S. 1, 17 n.14 (1977).    
 Yet, while contracts between private parties are
sometimes inferred rather easily, see McGrath, 88 F.3d at 19, the
Supreme Court has for obvious reasons been more demanding where
legislative acts are claimed to create contracts binding future
legislatures.  Thus, the Supreme Court has said that such a
surrender of legislative authority must be expressed "in terms too
plain to be mistaken."  United States v. Winstar Corp., 116 S. Ct.
2432, 2455 (1996) (quoting Jefferson Branch Bank v. Skelly, 66 U.S.
(1 Black) 436, 446 (1861)).  This court has followed that precept.  
Parker, 123 F.3d at 5.
 What has been called the "unmistakability doctrine,"
McGrath, 88 F.3d at 19, easily disposes of this case.  Ordinarily,
pay schedules for state employees can be altered at will by the
legislature.  The 1976 statute enacting incentive pay for court
clerks does not say in terms that it is creating contractual rights
or otherwise explicitly promise that incentive pay will never be
reduced or eliminated for clerks who obtained the degrees rewarded
by the statute.  Nor has any legislative history been unearthed by
the parties expressing the legislature's intention that incentive
pay be permanent and never subject to revision.
 The only scrap of evidence identified by the clerks is
the original statute's language "offering financial compensation
for clerks . . . for furthering their education."  R.I. Gen. Laws
8-4.1-1 (emphasis added).  "Offer" is a term often used in
contract formation, but it is also a word of general usage and does
not alone convey an "unmistakable" intent to create a binding
contract.  It could be easily argued that the term "compensation"
connotes "salary"--normally subject to legislative adjustment--
especially because the increase was not limited to the period
needed to recoup out-of-pocket costs of education.   
 Of course, a clerk with a specialized degree may be worth
more to the state, justifying payment of the educational bonus
after out-of-pocket expenses have been recovered.  But this view
makes the incentive pay look more like ordinary compensation
reflecting the employee's skill level, grade or seniority.  True,
there is seemingly an element of reimbursement as well--and
arguably some unfairness to any clerk who has not recovered his or
her costs.  But the commitment was not unmistakably contractual,
and that is the end of the matter under existing law.
    In the district court, the union also sought declaratory
relief based upon its collective bargaining agreement with the
state.  The collective bargaining agreement at issue included some
aspects of the statutory incentive pay plan (as well as other bonus
provisions not contained in the statute); to that extent, the
incentive pay of those clerks who were union members was
independently protected by the collective bargaining agreement.
    As already noted, the 1994 amendment at issue,
effectively reducing incentive pay for current clerks, stated that
it would not take effect as to clerks covered by labor contracts
until their collective bargaining agreement expired.  Thus the
statute was crafted to accommodate the agreement and not to
conflict with it.  The collective bargaining agreement contained an
expiration date of June 30, 1995, provided that one party gave
notice of intent to terminate.  The union does not dispute that the
state gave timely notice.
    However, there are a few references in the union's brief  
in this Court that could be read to suggest that the collective
bargaining agreement was somehow extended because assertedly one of
the negotiating lawyers wrote a letter on July 12, 1995,
representing that the state would maintain "the status quo during
negotiations."  Alternatively, the union may be suggesting that
Rhode Island's collective bargaining statute required the state to
continue to respect the terms of the expired agreement until an
impasse was declared or a new agreement negotiated.  These
suggestions may or may not be the same arguments that the district
court declined to address for failure to brief them.
    In all events, it is patent that the union's main brief
in this court does not seriously develop and support these further
arguments.  Any claims that the collective bargaining agreement was
extended beyond its expiration date require independent structure
and support.  The union's main brief contains nothing beyond terse
references and hints.  Under well-settled precedent, these further
claims are waived, and we decline to address them on the merits.  
United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied,
494 U.S. 1082 (1990).  
    Affirmed.

</body>

</html>